FILED

January 19, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 9:40 AM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| James Green,<br>　　　　　Employee, | ) Docket No.: 2015-08-0568 |
| v. | ) State File No.: 6779-2015 |
| Kellogg Companies,<br>　　　　　Employer, | ) Judge Robert Durham |
| And | ) |
| Corvel Ins. Co.,<br>　　　　　Insurance Carrier. | ) |

---

## COMPENSATION HEARING ORDER

---

This Compensation Hearing came before the undersigned Workers' Compensation Judge on January 11, 2017, pursuant to Tennessee Code Annotated section 50-6-239 (2016). The dispositive issue is whether Mr. Green sustained an injury to his right shoulder on November 14, 2014, that arose primarily out of and in the course and scope of his employment with Kellogg. If so, secondary issues include to what extent he is entitled to past and future medical benefits, temporary disability benefits, and permanent partial disability benefits for this injury.

The Court holds Mr. Green did not establish by a preponderance of evidence that he sustained injuries that arose primarily out of and in the course of his employment on November 14, 2014.

### Stipulations

At the hearing, the parties agreed to the following stipulations:

1.　　Mr. Green's alleged date of injury was November 14, 2014, and he

1

provided notice to Kellogg of his alleged injury on that day.

2. Mr. Green's compensation rate is $932.80 for temporary disability benefits and $848.00 for permanent partial disability benefits.

3. If Mr. Green's shoulder replacement is compensable, he would be entitled to temporary total disability benefits from September 15, 2015, until December 27, 2015.

4. If Mr. Green's shoulder replacement is compensable, his date of maximum medical improvement would be December 27, 2015.

5. Mr. Green's medical expenses for treatment of his right-shoulder injury that were not paid by Kellogg total $56,057.13.

6. The designated medical expense records and the designated medical records jointly submitted by the parties and presented as Collective Exhibits Three and Four are admissible as evidence for consideration by the Court.

### History of Claim

Mr. Green, fifty-eight, has made waffles for Kellogg for twenty-eight years, first as an "iron adjuster" and then, for the last seventeen years, as a "wheel technician." Mr. Green's job requires him to oversee a "wheel" of over one hundred waffle irons. He has to regulate the batter and heat, replace any irons that are working improperly, perform quality inspections, and periodically add "bits," i.e. small pieces of cinnamon or dried fruit, such as blueberries and strawberries, to the batter. To add bits, Mr. Green must use a pallet jack to bring in pallets holding boxes of bits weighing several hundred pounds to his station. He then must reach into the box and scoop the bits out with a bucket. After filling the bucket, he lifts it out of the box and carries it up several steps where he dumps it into a hopper that mixes the bits into the batter.

Mr. Green testified that on November 14, 2014, he attempted to scoop bits from a box when he felt sudden and intense pain in his right shoulder. He averred that, while he suffered from aches and pains in his shoulder before, he had never experienced this type of pain and had never missed work or sought treatment for right-shoulder pain before November 14. Kellogg offered no evidence to the contrary.

Mr. Green testified that immediately after the incident, he reported it to his supervisors, Jason Jackson and Bill Nabors. They sent him to see the company nurse, Pam Ewing. Mr. Green completed an accident report, and Ms. Ewing gave him some over-the-counter pain medication. Mr. Green then returned to work and finished his shift.

The next day, Mr. Green started work as usual, but he testified his right-shoulder

2

pain became so intense that he again sought Ms. Ewing's assistance. She gave him some aspirin, and he returned to his job. Mr. Green stated this went on for several weeks; he would daily communicate with Ms. Ewing about his shoulder pain, but continued to work full-duty, although with great difficulty and often requiring assistance from co-workers.

Mr. Green testified that on January 21, 2015, he insisted Ms. Ewing provide him with a doctor to treat his shoulder as soon as possible. Ms. Ewing provided a panel of physicians and informed him that Dr. Lloyd Robinson could see him quickly, but that an appointment with one of the other doctors would result in some delay. Mr. Green chose Dr. Robinson and signed the panel accordingly.

Mr. Green saw Dr. Robinson, a family practitioner, the next day. (Ex. 2 at 6.) In the medical history forms, Mr. Green stated the injury occurred two months earlier and he had never had a similar injury in the past. (Ex. 2 at 45.) In his records, Dr. Robinson noted Mr. Green complained of "acute pain" in his right shoulder after lifting buckets at work. (Ex. 2 at 48.)

In his deposition, Dr. Robinson testified Mr. Green did not advise him of a specific work injury occurring on November 14, but stated he suffered worsening right-shoulder pain after lifting buckets at work. Dr. Robinson ordered x-rays and noted arthritic damage to Mr. Green's right shoulder. (Ex. 2 at 7.) He diagnosed Mr. Green with a shoulder strain, placed him under restrictions, and ordered physical therapy, which Corvel, Kellogg's workers' compensation administrator, never approved. (Ex. 2 at 8.) Mr. Green did undergo an initial evaluation for physical therapy and, according to the note, informed the therapist that he first noticed pain in his right shoulder when "reaching to scoop a heavy scoopful of brown sugar at Kellogg's. He felt a 'pop' in his shoulder and immediately felt an intense burn that radiated into proximal arm." (Ex. 2 at 68.)

Dr. Robinson eventually ordered an MRI that showed extensive arthritic damage in Mr. Green's right shoulder, but there was no rotator cuff tear or evidence of an acute injury. (Ex. 2 at 9-11.) At that time, Dr. Robinson opined Mr. Green's underlying arthritis was the primary cause of his symptoms and that it was not a work-related condition. (Ex. 2 at 27.) Dr. Robinson then released Mr. Green to seek treatment with his primary care physician. (Ex. 2 at 11.) In his deposition, Dr. Robinson continued to opine that Mr. Green's employment contributed less than 50% to his pain complaints and that the underlying pre-existing arthritis was the primary cause of his symptoms. (Ex. 2 at 13-14.)

Mr. Green testified he did not feel Dr. Robinson would provide any substantive treatment for his shoulder; therefore, he saw his family practitioner, Dr. Lee McCallum, about a week after he began seeing Dr. Robinson. Dr. McCallum noted Mr. Green stated the pain began a week earlier when he was "picking up a pail and heard a pop." (Ex. 4 at 51.) Dr. McCallum eventually referred Mr. Green to Dr. Kenneth Weiss, an orthopedist,

3

for specialized treatment. At the time of his referral, Dr. McCallum diagnosed Mr. Green with a "repetitive motion injury" and stated it "seems to be work-related to me." (Ex. 4 at 42.)

At Mr. Green's initial visit, Dr. Weiss noted that Mr. Green stated he had a "long history" of shoulder pain, claiming, "it has been hurting through the years." (Ex. 2 at 94.) After attempting conservative care, Dr. Weiss eventually performed a right-shoulder replacement on September 14, 2015. He subsequently wrote a letter opining the following:

> Mr. Green is a patient of mine. We have been treating him for his right shoulder pain with glenohumeral arthrosis. We do feel that the diagnosis from which we are treating him is compatible with his duties that he was performing while at Kellogg. We do feel that the shoulder issues and his glenohumeral arthrosis, which required surgery, is consistent with or at least exacerbated by his repetitive pushing, pulling and lifting the arm while at work.

(Ex. 2 at 72.)

Mr. Green worked full-duty at full pay until his surgery. After surgery, he remained off work until December 27, 2015, and then returned to full-duty with no restrictions. Mr. Green testified he continues to work at Kellogg as a wheel technician with no restrictions, albeit with some difficulty. He lacks full range of motion in his shoulder and frequently experiences pain as well as numbness and tingling in his right shoulder and arm.

Mr. Green entered the C-32 Medical Report of Samuel Chung, D.O. into evidence. (Ex. 1.) In the C-32, Dr. Chung, an osteopath, opined Mr. Green did not suffer any temporary total disability as a result of his right-shoulder condition, although the parties stipulated that the "dates temporary total unpaid" was from September 15, 2015, through December 27, 2015. (Ex. 1 at 5 and T.R. 1.) Dr. Chung also opined that Mr. Green reached maximum medical improvement on December 1, 2015, although the parties stipulated the "date of maximum recovery or return to work" from Dr. Weiss' surgery was December 27, 2015. On the form, Dr. Chung marked that Mr. Green's injury "more probably than not" arose from his work; however, an unsigned addendum to the C-32 does have an "X" next to "yes" to the question as to whether the employee's injury "arises primarily out of and in the course and scope of employment." In addition, the form has an "X" next to "yes" to the following question:

> What is your opinion as to whether the employee's death, disablement or the and whether Mr. Green's "disablement or the need for medical treatment is shown to a reasonable degree of medical certainty that it

4

contributed more than fifty percent (50%) in causing the death, disablement or the need for medical treatment, considering all causes.

(Ex. 1 at 11.) Dr. Chung did not place any specific weight restrictions on Mr. Green's right-shoulder use but did recommend he limit climbing, balancing, and working overhead or away from his body. (Ex. 1 at 9.) He opined Mr. Green sustained a 14% impairment to the body as a whole pursuant to the AMA Guides, Sixth Edition, as a result of his right-shoulder injury. (Ex. 1 at 5.)

Mr. Green testified that, following Corvel's denial, he repeatedly asked Ms. Ewing for additional care through workers' compensation, but she told him she could not help him given Corvel's denial. Kellogg did not offer any witnesses to counter Mr. Green's assertions regarding his interactions with his managers or Ms. Ewing.

**Findings of Fact and Conclusions of Law**

The Court considers the following legal principles in reaching its conclusions in this matter. The Court must interpret the Workers' Compensation Law fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2016). Mr. Green has the burden of proof on all essential elements of his workers' compensation claim, including causation. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

In order to establish causation, an employee must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2016). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2016). Thus, causation must be established by expert medical testimony, and it must be more than "speculation or possibility" on the part of the doctor. *Id.*

In this matter, both Mr. Green and Kellogg offered medical testimony. When weighing expert testimony, the law provides the causation opinion of a physician selected from a panel "pursuant to § 50-6-204(a)(3)" is presumed correct, but may be rebutted by the preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E) (2016). Therefore, the Court must first determine whether Dr. Robinson's opinion must be presumed correct regarding causation.

The parties do not dispute that Mr. Green selected Dr. Robinson's name on January 24, 2015, from a panel provided to him by Kellogg, nor does Mr. Green dispute that the panel met the requirements of Tennessee Code Annotated section 50-6-204(a)(3)

5

(2016). However, he did assert that it took repeated requests over a period of more than two months for Kellogg to provide the panel, and when it did, Ms. Ewing directed him toward Dr. Robinson.

The Court agrees that waiting more than two months to provide a panel after an injury is reported is improper; however, the fact remains that Kellogg did eventually provide one that complied with the law. As to his assertion that Ms. Ewing "directed" him to Dr. Robinson, Mr. Green testified he demanded to see a doctor as soon as possible and Ms. Ewing told him Dr. Robinson was available right away, but it would take some time to get an appointment with the other physicians on the panel. Mr. Green offered no evidence disputing Ms. Ewing's assertion, and the fact that he obtained an appointment with Dr. Robinson the following day tends to corroborate her statement. He also offered no evidence that he would not have been allowed to choose one of the other physicians had he decided to do so. Thus, the Court finds Mr. Green chose Dr. Robinson from a proper panel and further holds that Dr. Robinson's opinion is entitled to a presumption of correctness pursuant to Tennessee Code Annotated section 50-6-102(14)(E) (2016).

In his deposition, Dr. Robinson opined to a reasonable degree of medical certainty that Mr. Green's shoulder pain was primarily caused by his underlying, pre-existing arthritis, which was not a work-related condition. In order to prevail, Mr. Green must rebut this opinion by a preponderance of the evidence. When weighing the evidence offered by Mr. Green against Dr. Robinson's testimony, the Court finds Mr. Green failed to meet this burden.

Mr. Green offered the C-32 of Dr. Chung in an attempt to rebut Dr, Robinson's testimony. "In evaluating expert medical opinions, a trial judge may consider, among other things, the qualifications of the experts, the circumstances of their evaluation, the information available to them, and the evaluation of the importance of that information by other experts." *Venable v. Superior Essex, Inc.*, No. 2015-05-0582, 2016 TN Wrk. Comp. App. Bd. LEXIS 56, at *6 (Tenn. Workers' Comp. App. Bd. Nov. 2, 2016). "A trial judge has the discretion to conclude that the opinion of one expert should be accepted over that of another expert." *Sanker v. Nacarato Trucks, Inc.*, No. 2016-06-0101, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *11-12 (citation omitted). The Court finds Dr. Robinson's opinion more persuasive for several reasons.

First, Dr. Chung's testimony is offered through a C-32 written medical report as opposed to a deposition. While a C-32 is certainly admissible, it is often less effective than a deposition given that the evidence contained within is not subject to explanation or cross-examination. Second, Dr. Chung is an osteopath, which requires less training and education than a medical doctor, as illustrated by Dr. Chung's CV attached to the C-32. Again, while an osteopath is qualified by law to testify as to causation, the Court finds Dr. Robinson's training and education to be more persuasive in this instance.

6

Finally, the C-32 completed by Dr. Chung contained numerous errors that did little to create confidence in its reliability. It indicated Mr. Green did not suffer any temporary total disability even though it is undisputed he was off work for three months following surgery. It also stated he reached maximum medical improvement on December 1, 2015, although there is no indication as to how Dr. Chung arrived at this date when the parties agreed Mr. Green returned to work on December 28. Finally, the C-32 contained the causation standard that applied to injuries prior to July 1, 2014, and has no application to Mr. Green's injury. In fact, due to this error, the C-32 fails to rebut Dr. Robinson's opinion at all unless the document attached to the back of the C-32, which does state the correct causation standard, is considered an addendum to the report. However, while it may have been intended as an addendum, the document is unsigned. There is also no reference in the C-32 to the document or the opinions contained within it. Furthermore, the second question on the form, regarding "the employee's death, disablement or need for treatment," makes little sense when read in its entirety. Given the factors stated above, the Court cannot find Dr. Chung's C-32 is sufficient to overcome Dr. Robinson's opinion regarding causation.[1]

Of course, Dr. Chung's C-32 is not the only evidence offered by Mr. Robinson regarding causation. He also testified that he experienced intense pain in his right shoulder while using a bucket to scoop out "bits," and he had never experienced such symptoms before. While lay testimony cannot, in and of itself, serve to establish causation, it can certainly corroborate the testimony provided by experts. However, in this instance, while the Court has no reason to doubt Mr. Robinson's testimony that the November 14, 2014 event exacerbated his condition, he also testified he suffered from "aches and pains" in his shoulder before this event. The records of Dr. McCallum and Dr. Weiss, who both recorded that Mr. Robinson told them he had suffered from shoulder pain for years, corroborated this testimony. Furthermore, while Dr. McCallum and Dr. Weiss indicated in their records that it "seemed" Mr. Robinson's shoulder complaints were work-related, and his condition was consistent with his employment at Kellogg, neither opined that Mr. Robinson's right-shoulder condition arose primarily out of and in the course and scope of the work incident on November 14, 2014. *See* Tenn. Code Ann. § 50-6-012(14)(A) (2016). As a result, the Court finds the additional evidence offered by Mr. Green, in conjunction with Dr. Chung's C-32, is still insufficient to overcome the presumption of correctness afforded Dr. Robinson's causation opinion.

Accordingly, the Court finds Mr. Green failed to prove by a preponderance of the evidence that he sustained an injury that primarily arose out of and in the course and scope of his employment on November 14, 2014 with Kellogg. *See* Tenn. Code Ann. § 50-6-102(14) (2016). Given the above finding, it is unnecessary to address other issues raised by the parties.

---

[1] The Court would note that, unfortunately, neither party decided to obtain the testimony of Dr. Weiss, who would most likely have the most credible opinion regarding the cause of Mr. Green's shoulder condition and the need for shoulder-replacement surgery.

**IT IS, THEREFORE, ORDERED** as follows:

1.      Mr. Green's claim for workers' compensation benefits is denied.

2.      This Compensation Order constitutes a final adjudication upon the merits of Mr. Green's claim.

3.      The $150.00 filing fee for this this cause is taxed to Kellogg, pursuant to Rule 0800-02-21-.07 (2015) of the Tennessee Compilation Rules and Regulations.

4.      Kellogg shall prepare and file a Statistical Data Form within ten business days of the date of entry of this Order.

**ENTERED THIS THE /9 ᵀᴴ DAY OF January, 2017.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1.      Form C-32 of Dr. Samuel Chung with attachments
2.      Deposition of Dr. Lloyd Robinson with attachments
3.      Designated Medical Bills
4.      Designated Medical Records
5.      Form C-42

Technical Record:

1.      Notice of Stipulations for Trial
2.      Notice of Disputed Issues for Trial
3.      Employer's Pre-Hearing Statement
4.      Employee's Pre-Hearing Statement
5.      Order Denying Motion to Compel Discovery
6.      Employer's Response in Opposition to Motion to Compel Discovery
7.      Motion to Compel Discovery
8.      Dispute Certification Notice

9.     Initial Hearing Order
10.   Employee's Witness List
11.   Amended Employee's Lay Witness List
12.   Employer's Expert Witness List
13.   Employer's Lay Witness List
14.   Transfer Order

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 19th day of January, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Shannon Toon | | | X | stoon@taylortoon.com |
| Thomas J. Smith | | | X | tsmith@spicerfirm.com |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**